RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 4/5/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARK CHATTERSON #155378 | DOCKET NO. 1:10-CV-518; SEC. P |
| VERSUS | JUDGE TRIMBLE |
| SGT. FLOWERS, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff, Mark Chatterson, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC), and he is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He complains that he is subjected to illegal searches twice a day in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff works in the Prison Enterprises garment factory at WNC. He complains that twice per day, he is forced to remove all of his clothing, in an unsanitary room and along with ten or eleven other inmates, to be searched for contraband.

Plaintiff was previously represented by court-appointed counsel, but those attorneys have since been allowed to withdraw from the case. Plaintiff is once again proceeding pro se.

## *Law and Analysis*

### 1. Official Capacity Claims

Chatterson has sued Sgt. Flowers, M. Melston, Mr. Sanders, Mr. Johnson, and Mr. Mac in their official capacities only. He has sued Tim Wilkinson, CCA, Jay Morgan, Angie Martin, Virgil Lucas, and Tommy Glover in both individual and official capacities. The Eleventh Amendment to the United States Constitution bars Section 1983 suits for monetary damages against a state official in his/her official capacity. See <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002); <u>Buckhannon Bd. And Care Home Inc. V. West Virginia Dept. Of Health and Human Resources</u>, 532 U.S. 598, 610 n.10 (2001). Additionally, neither a State nor its officials acting in their official capacities are 'persons' under 42 U.S.C. §1983. <u>Will v. Michigan Dept. Sate Police</u>, 491 U.S. 58, 71 (1989).

Although WNC is operated by a private corporation, CCA, it is operated for the safety and welfare of the people of the state, as opposed to a local interest. See <u>Citrano v. Allen Correctional Center</u>, 891 F.Supp 312 (W.D.La. 1995)(citing LSA R.S. 39:1800). Thus, suits against WNC employees, in their official capacities, are barred by the Eleventh Amendment. Thus, all of Plaintiff's "official capacity" claims should be dismissed.

### 2. "Cavity Searches" and Strip Searches

Several inmates filed lawsuits similar to Plaintiff's. The inmates all alleged that they were subjected to routine strip **and**

***body cavity searches***, conducted by non-medical personnel. It was initially unclear whether these so-called "cavity searches" were **visual** inspections **or manual** searches involving the insertion of a finger or medical tool into the Plaintiff's rectum.[1] In Petitioner's amended complaint, he provides that the "cavity searches" of which he complains are **visual inspections only**.

First, the Supreme Court has held that when a prison regulation or policy impinges on inmates' constitutional rights, the regulation or policy is valid if it is reasonably related to legitimate penological interests. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). The government interest in this case is maintaining security at WNC. The Fifth Circuit has repeatedly held that no constitutional violation occurs when naked male inmates are viewed by female guards if the presence of female guards is required to protect a legitimate government interest such as maintaining security at a correctional facility. <u>West v. Parker</u>, 68 F.3d 466 (5th Cir. 1995), <u>Oliver v. Scott</u>, 276 F.2d 736, 743-44 (5th Cir. 2002); <u>Letcher v. Turner</u>, 968 F.2d 508 (5th Cir. 1992). Plaintiff has not alleged that the presence of female officers at WNC is

---

[1] Unfortunately, the terms used to describe and categorize strip searches, *visual* body cavity searches, and *physical or manual* body cavity searches are often used interchangeably in court opinions, pleadings, and in legislation. This inconsistency in language results in a confused body of law. See eg., William J. Simonitsch, <u>Visual Body Cavity Searches Incident to Arrest: Validity Under the Fourth Amendment</u>, 54 U. Miami L. Rev. 665, 667 (2000).

3

unnecessary to maintain security.

A state offender's Fourth Amendment protections are greatly limited in prison situations. A strip search or visual body cavity search of a prison inmate, which includes the exposure of body cavities for **visual** inspection, is not per se unreasonable under the Fourth Amendment. See Thorne v. Jones, 765 F.2d 1276 (5th Cir. 1985), citing United States v. Lilly, 576 F.2d 1240 (5th Cir. 1978). The Fourth Amendment requires only that "'searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed.'" Elliott v. Lynn, 38 F.3d 188 (5th Cir. 1994), quoting United States v. Lilly, supra. As articulated in this context by the United States Supreme Court in Bell v. Wolfish:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. 520, 559 (1979). The Fifth Circuit has interpreted this statement of reasonableness as "striking a balance 'in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner.'" Elliott v. Lynn, supra, quoting Watt v. City of Richardson Police Dept., 849 F.2d 195, 196 (5th Cir. 1988).

The law is clear that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are, like visual cavity searches, not per se unconstitutional. See Tasby v. Lynaugh, 123 Fed. Appx. 614 (5th Cir. 2005)(citing Letcher v. Turner, 968 F.2d 508, 510 (5th Cir. 1992); Elliott v. Lynn, 38 F.3d 188, 190-92 (5th Cir. 1994); Oliver v. Scott, 276 F.3d 736, 747 (5th Cir. 2002). In this case, the "cavity searches" complained of by Plaintiff were only visual inspections of Plaintiff's rectum, and no physical intrusion into any orifice of Plaintiff's body was involved. Additionally, Plaintiff specifically states that females have not conducted any of the objectionable searches, nor have female officers even been present in the room during the searches. [Doc. #1, 5, p.6] Rather, Plaintiff claims that Defendant Melton or other female officers who may happen to walk down the hall during the searches could potentially look into the room and see Plaintiff. [Id.] It should be noted that Plaintiff does **not** allege that Melton, or any other female, actually looked through the window or door and saw him being searched. [Doc. #1, 5, p.6] His argument is that *if* one of these females walked down the hall, she *could potentially* view the search if she chose to look through the window or door.

Plaintiff does not allege that there is no penological interest involved. He recognizes the possibility of inmates removing tools from the garment factory. [Doc. #1,5 p.8] However,

he believes that enough protections are in place. For example, he states that before any inmate leaves the garment factory, all tools are accounted for. Also, inmates pass through metal detectors (after the strip searches), so any metal tool that is concealed would be revealed. [Doc. #1,5 p.8] Although these two precautions monitor tools and metal objects, these methods obviously would not reveal any hidden *non-metal* object nor an object that is not a tool, per se, but that could be made into a weapon if removed from the factory. Thus, Plaintiff's own allegations reveal the danger in relying only on tool counting and metal detecting. Plaintiff's conclusions regarding the amount of security necessary at WNC are conclusory and reflect only his opinion.

3. **Eighth Amendment**

Plaintiff complains of unsanitary conditions in the room where strip searches were/are conducted. Conditions of confinement claims are analyzed under the Eighth Amendment and have two required components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The deprivation alleged must be sufficiently serious. See id. Also, the prison official must have acted with a sufficiently culpable state of mind. See id.; Farmer v. Brennan, 511 U.S. 825, 838 (1994). In prison conditions of confinement cases, that state of mind is deliberate indifference, which the Supreme Court has defined as knowing of and disregarding an excessive risk to inmate health or safety. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The cleanliness or sterility of the room could pose an unreasonable risk *if* the inmates were being subjected to manual searches of their body cavities. However, Plaintiff's body cavities were not manually searched. Plaintiff's allegation that the condition of the search room put him at an unreasonable risk of danger is conclusory.

4.   **Resolution of Grievances**

Plaintiff claims that his constitutional rights were violated because his grievances were never forwarded to the office of the Secretary of Corrections. An inmate has no constitutional right to a grievance procedure, and has no due process liberty interest in having his grievance resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005). Additionally, even if a prison official failed to submit the grievance in accordance with the prison's own regulation or policy, such actions do not amount to a constitutional violation. See Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986).

5.   **Injunctive Relief**

Plaintiff requests that Injunctive relief be granted by having the Court order WNC to cease regular strip and visual cavity searches. Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" to act or refrain from acting in a certain manner is an extraordinary remedy. See Morrow v. Harwell, 768 F.2d 619, 627 (5th Cir. 1985). Plaintiff

7

has not demonstrated that such an extraordinary remedy is appropriate in this case.

## Conclusion

For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED AND DISMISSED with prejudice** for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(b) and 1915A.

## Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 3rd day of April, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE